IN THE UNITED STATES DISTRICT COURT

FOR THE MDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY LYNN BROWN, BYRON L. RAGLAND, and STEVEN J. MERCADEL,<br>Plaintiffs,<br><br>VS.<br><br>LATTER AND BLUM PROPERTY MANAGEMENT, INC.,<br>Defendant | * <br> *    CIVIL ACTION <br> * <br> *    NO. <br> * <br> * <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

1.   Plaintiffs bring this suit under the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 et seq., for injunctive, monetary and declarative relief against Defendant for engaging in a pattern or practice of illegal discrimination on the basis of race and color at apartment buildings they manage and which at least until the events at issue received federal funds to house low income individuals with special needs.  Plaintiffs also seek damages under the Fair Credit Reporting Act.

2.   Defendant's discriminatory actions consist primarily in screening rental applicants on the basis of criminal background checks, without any individualized consideration of whether the applicants are appropriate tenants despite their past criminal involvement.  Because African Americans and Hispanic Americans are disproportionately involved with the criminal justice system, this has a disparate impact based on race.  Other means of furthering the business's interests are available.

## PARTIES

1

3.     **Defendant Latter & Blum Property Management Inc.** ("Latter & Blum") is a property management company headquartered at 5557 Canal Boulevard, New Orleans, Louisiana 70124.

4.     Latter and Blum manages large numbers of properties in New Orleans and Baton Rouge, at least, and is subject to the federal Fair Housing Act.

5.     All apartment buildings referred to in this Complaint are managed by Latter and Blum.

6.     Until the events at issue each of the apartment buildings participated in the Permanent Supportive Housing program, a federally funded program that provides affordable housing to low-income individuals with physical or behavioral disabilities.

7.     All of the acts alleged to have been committed or omitted by Defendant were committed or omitted by Defendant through its agents, servants or representatives, acting within the scope of their authority and employment.

8.     **Plaintiff Troy Lynn Brown** is an African American individual with disabilities, including anxiety, depression, and bipolar disorder. She now manages these diseases with medication and therapy, but for many years her illnesses were undiagnosed. She fell into a pattern of self-medicating and became addicted to illegal drugs. With the help of family members and Pastor Michael Smith of the New Covenant Christian Center and her church community, Ms. Brown entered treatment for her addiction and has been clean and sober since 2007. Now 55 years old and a grandmother to five boys, she receives Supplemental Security Income assistance ("SSI").

9.     She has had past criminal charges, but on information and belief most were from the 1990s and all were refused for prosecution.

10.    On information and belief she has had no involvement with the criminal justice system since 2007 when, in her words, her "life changed" and she "let the Lord in."

11. Ms. Brown felt devastated by Latter & Blum's denial of her application for housing. Ms. Brown believes that she was treated as "not a person—just a sheet," meaning a list of past charges.

12. She has been in Permanent Supportive Housing since approximately 2009. Right now, she has a 2 bedroom unit, but it is in very bad shape. Part of her ceiling is collapsed and there is a lot of mildew in the walls because of unrepaired roof problems from a couple of hurricanes back.

13. Troy applied to lease through Latter and Blum, on information and belief at the Corona. She never received any notification from Latter and Blum that she had been turned down or as to what reports they had checked in deciding to reject her application.

14. Her counsel requested a reasonable accommodation on her behalf on May 26, 2016. But no accommodation was granted, nor any process initiated to determine if an alternative accommodation was possible.

15. **Plaintiff Byron L. Ragland** is 54 years old, African American and a double amputee who qualifies for housing through the Permanent Supportive Housing program. In 2014, he applied to rent an apartment at Scott School Apartments, a building run by the Defendant in Baton Rouge.

16. He never received a denial notice from Latter and Blum to advise him if criminal charges are the basis for his denial, or what those charges were.

17. He was told by word of mouth that Scott School has no "handicapped units" available. To be denied any housing at all based on the fact that housing designated for persons with handicaps was not available, without offering and allowing assessment of whether he could rent in a unit that was not specially equipped would be discrimination on the bases of handicap.

18. Mr. Ragland's housing situation is unstable. His mother has taken him into her home in Jackson, Mississippi. Mr. Ragland is constantly aware that his mother does not have room

3

for him, and he feels like a burden. He is eager to re-establish himself in Baton Rouge and move forward with his life. His mother's home is not wheelchair-accessible.

19. His counsel requested a reasonable accommodation on his behalf on May 26, 2016. But no accommodation was granted, nor any process initiated to determine if an alternative accommodation was possible.

20. **Plaintiff Steven J. Mercadel** is a 45 year old African American who walks with a cane as a result of a gunshot wound, who applied with Permanent Supportive Housing assistance to reside at the Corona. He has an extensive criminal involvement from the 1990s. In 2007 he had a drug conviction.

21. He was denied residence at the Corona. Latter and Blum managers told him that they could not "divulge" the specific reasons for his denial.

22. After he sought help through Magellan (which managed the Permanent Supportive Housing program at the time) he was told by a Latter and Blum manager that he could only qualify for Latter and Blum housing at the Scott School or One Stop. Both of these two buildings have visible drug use and drug dealing on site, and lack of security.

23. He instead applied at the Elysian, and was denied the opportunity to rent. When he wrote for reasons, he was given a notice that referred in part to his criminal history and a background check.

24. His counsel requested a reasonable accommodation on his behalf on May 26, 2016. But no accommodation was granted, nor any process initiated to determine if an alternative accommodation was possible.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 3613, 28 U.S.C. §§ 1331 and 1343(a)(3).

26. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant conducted business in the district and a substantial part of the events and omissions giving rise to the claims occurred in the district.

## ADDITIONAL FACTS

27. The Elysian and Corona have resident admission policies excluding all applicants who have ever been convicted of a felony or misdemeanor against a person, property, or society, and even excluding persons *charged with* a felony or misdemeanor on the last seven years. The Scott School & One Stop have resident admission policies excluding all applicants who have any criminal conviction in the last 4 years unless receiving services through certain programs providing services to formerly incarcerated persons.

28. These policies exclude all such people regardless of the specific nature of the crime or evidence of rehabilitation or any other factor related to whether a specific person poses any threat to safety.

29. Under Defendant's current policies, even formerly incarcerated individuals with exemplary post-incarceration achievements are excluded.

30. Under these policies, Defendant has refused to rent apartments to the Plaintiffs because they have criminal histories.

31. In the summer of 2014, the Plaintiffs tried to rent apartments from Defendant. All were denied.

32. Defendant continues to apply its criminal record policies, to the detriment of Plaintiffs and other applicants.

33. Blanket bans like the one maintained and enforced by Defendant are discriminatory and have a clear and unlawful disparate impact on African Americans and Latinos. The

disproportionate rates of conviction and incarceration of African Americans and Latinos, as compared to whites, are well-documented.[1]

34. Banning people from safe and affordable housing based solely on a criminal conviction thereby has a predictable and significant adverse impact on African Americans and Latinos. In the analogous context of employment, this is exactly what the United States Equal Employment Opportunity Commission ("EEOC") has found by analyzing national criminal records data.[2]

35. Under the Fair Housing Act, a policy that has a disparate impact may be permissible if it is necessary to achieve a legitimate business purpose that cannot be satisfied with a less discriminatory alternative. That is not the case here. A clear and obviously less discriminatory alternative for dealing with any potential concerns raised by applicants with criminal records is available to Defendant: one that is already established in the area of employment discrimination law and regulation.

36. Instead of applying a blanket ban, Defendant could assess potential residents with criminal records individually by considering factors directly relevant to appropriate qualifications for tenancy. This could include the nature of the conviction or conduct, how long ago it occurred, the age of the person at the time of the conviction, post-conviction and post-release conduct, evidence of rehabilitation, evidence of any current threat to safety, letters of recommendation, the individual's history as a tenant and as a whole, and other factors.

---

[1] "White" is used herein to refer to non-Hispanic Caucasians.
[2] *See generally* U.S. Equal Emp't Opportunity Comm'n, EEOC Enforcement Guidance, Number 915.002 (Apr. 25, 2012), http://www.eeoc.gov/laws/guidance/arrest_conviction.cfm (last viewed August 2, 2016).

37. The EEOC applies a presumption in the employment context that, because of the racially disparate impact of blanket bans, precisely such an individualized assessment is required by law and sufficient to protect legitimate interests such as safety.[3]

38. The EEOC's rationale applies with equal force to housing.

39. As a result the U.S. Department of Housing and Urban Development recently issued guidance to similar effect with respect to housing discrimination.[4]

40. The policy discusses the disparate effect of considering criminal justice records and states, "housing providers that apply a policy or practice that excludes persons with prior convictions must still be able to prove that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest.  A housing provider that imposes a blanket prohibition on any person with any conviction record – no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then – will be unable to meet this burden."[5]

41. Through an individualized assessment, Defendant would maintain the ability to review carefully all applicants while permitting prospective tenants who have criminal records, but pose no realistic threat to the community, to obtain housing.  This more tailored approach would protect public safety equally well, yet it would be less discriminatory and exclusionary because it would reduce the number of African Americans and Latinos prevented from securing housing.

---

[3] *Id.*

[4] U.S. Dep't of Housing and Urban Development, Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions (Apr. 4, 2016) http://portal.hud.gov/hudportal/documents/huddoc?id=HUD_OGCGuidAppFHAStandCR.pdf (last viewed August 2, 2016).

[5] *Id.* at 6.

42. Facially neutral housing practices that have a disparate impact on the basis of race or color are prohibited by the Fair Housing Act unless they are necessary to achieve a legitimate business purpose that cannot be satisfied through a less discriminatory alternative practice.

43. Defendant's policies are unlawful under this standard.

44. Unlike African Americans and Latinos, whites are incarcerated, and therefore released from jails and prisons, at rates significantly lower than their representation in the general population.

45. Based on national incarceration data, the U.S. Department of Justice estimates that 1 in 3 African-American men will go to prison at some point in their lifetime. For Latino men, the rate of expected incarceration is 1 in 6. For white men, the figure is only 1 in 17.19  Thus, African-American men are six times more likely to be incarcerated than white men, and Latino men are almost three times more likely to be incarcerated than white men.[6]

46. It would not compromise any legitimate concern Defendants may have to give individualized consideration to applicants.

47. Because Defendant's policies have a large discriminatory impact on the basis of race and are not necessary to achieve a legitimate business purpose, they are unlawfully discriminatory.

### First Cause Of Action
### Race and Disability Discrimination in Violation of 42 U.S.C. § 3604

48. Plaintiffs repeat and incorporate by reference the allegations of the above paragraphs.

49. Defendant's criminal background policies have an adverse and disproportionate impact on African Americans and Latinos as compared to similarly situated whites. This adverse and disproportionate impact is the direct result of Defendant's blanket policy of automatically

---

[6] The Sentencing Project, Report of the Sentencing Project to the United Nations Human Rights Committee: Regarding Racial Disparties in the United States Criminal Justice System (Aug. 2013), http://www.sentencingproject.org/wp-content/uploads/2015/12/Race-and-Justice-Shadow-Report-ICCPR.pdf (last viewed (August 2, 2016).

8

refusing housing based on criminal records with no consideration of applicants' individual characteristics and circumstances.  This policy is not necessary to serve any substantial legitimate, nondiscriminatory interest, and any such interest can be satisfied by another practice - providing individualized consideration - that would have a less discriminatory effect.

50.   Defendant's acts, policies, and practices constitute discrimination and violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3604, and its implementing regulations, especially 24 CFR 100.500, in that:

   a.   Defendant's acts, policies, and practices have made and continue to make housing unavailable because of race and/or color, in violation of 42 U.S.C. § 3604(a).

   b.   Defendant's acts, as described above, provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race and/or color, in violation of 42 U.S.C. § 3604(b); and

   c.   Defendant's policies have expressed and/or continue to express a preference, limitation, and discrimination based on race and/or color, in violation of 42 U.S.C. § 3604(c).

51.   Because of their disabilities, each Plaintiff is a person with a handicap, within the meaning of 42 U.S.C. § 3602(h)(1).

52.   Each of the Plaintiffs has limited income because of their disabilities, and needs services available through the Permant Supportive Housing program.

53.   Each been unable to find decent housing through the Permanent Supportive Housing program in the Baton Rouge area, which would not be the case but for Defendant's blanket criminal background policies.

54.   Defendant's actions in failing to reasonably accommodate the Plaintiffs' disabilities deny them an equal opportunity to use and enjoy a dwelling.

## Second Cause Of Action
## Fair Credit Reporting Act Violation of 15 U.S.C. § 1681m

55. Plaintiffs repeat and incorporate by reference the allegations of the above paragraphs.

56. Latter & Blum relied on reports obtained from third party agencies that cumulate information on consumers in reviewing Plaintiffs' rental applications.

57. Latter and Blum failed to clearly and accurately disclose to the consumers the reason for denial and their right to make a written request to obtain the third party information it relied upon in taking adverse action on their applications, contrary to 15 U.S.C. § 1681m.

58. Latter & Blum's conduct of not disclosing to the Plaintiffs the use of these reports was willful, rendering Latter & Blum liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C.S. § 1681n. Alternatively, Latter & Blum's conduct was negligent, rendering Latter & Blum liable for actual damages pursuant to 15 U.S.C.S. § 1681o.

WHEREFORE, Plaintiffs respectfully pray that the Court:

(1) Enter a declaratory judgment finding that the policies of Defendant violate 42 U.S.C. § 3604 and that Defendant has violated 15 U.S.C. § 1681m;

(2) Enter an injunction enjoining Defendant and its directors, officers, agents and employees from continuing to enforce the illegal, discriminatory policies described herein and directing Defendant and its directors, officers, agents and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

(3) Award compensatory damages to Plaintiffs in an amount to be determined that would fully compensate Plaintiffs for their injuries caused by the conduct of Defendant alleged herein;

(4) Award statutory damages to Plaintiffs under the Fair Credit Reporting Act;

(5) Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2) and 15 U.S.C. §§1681n & 1681o;

(6) Order such other relief as this Court deems just and equitable.

        Respectfully submitted,

        SOUTHEAST LOUISIANA LEGAL SERVICES

        By:  /s/David Williams  
        David H. Williams, Bar No. 17867  
        1010 Common Street, Suite 1400A  
        New Orleans, Louisiana 70112  
        Telephone: (504) 529-1063  
        dwilliams@slls.org  
        Fax: (504) 596-2241

        Attorneys for Plaintiff